IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

SHERRY K. DAVIS,

    Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

No. C10-2057

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.   *INTRODUCTION* .................................... 2

II.  *PROCEDURAL BACKGROUND* ......................... 2

III. *PRINCIPLES OF REVIEW* ............................. 3

IV. *FACTS* .......................................... 5
    A.  *Davis' Education and Employment Background* ............... 5
    B.  *Administrative Hearing Testimony* ......................... 6
        1.  *Davis' Testimony* ................................. 6
        2.  *Vocational Expert's Testimony* ....................... 7
    C.  *Davis' Medical History* ................................. 8

V.  *CONCLUSIONS OF LAW* ............................. 11
    A.  *ALJ's Disability Determination* ......................... 11
    B.  *Objections Raised By Claimant* ......................... 13
        1.  *Dr. Bernstrom's Opinions* ......................... 13
        2.  *Hypothetical Question* ............................ 15
        3.  *RFC Determination* .............................. 17

VI. *CONCLUSION* .................................... 19

VII. *ORDER* ........................................ 19

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 1) filed by Plaintiff Sherry K. Davis on September 12, 2010, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title II disability insurance benefits. Davis asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits. In the alternative, Davis requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On July 3, 2007, Davis applied for disability insurance benefits. In her application, Davis alleged an inability to work since June 1, 2006 due to hand problems, knee problems, a learning disability, and depression. Davis' application was denied on October 23, 2007. On March 11, 2008, her application was denied on reconsideration. On April 14, 2008, Davis requested an administrative hearing before an Administrative Law Judge ("ALJ"). On October 21, 2009, Davis appeared via video conference with her attorney before ALJ Thomas M. Donahue for an administrative hearing.[1] Davis and vocational expert Elizabeth Albrecht testified at the hearing. In a decision dated November 9, 2009, the ALJ denied Davis' claim. The ALJ determined that Davis was not disabled and not entitled to disability insurance benefits because she was functionally capable of performing other work that exists in significant numbers in the national economy. Davis appealed the ALJ's decision. On July 13, 2010, the Appeals Council denied Davis' request for review. Consequently, the ALJ's November 9, 2009 decision was adopted as the Commissioner's final decision.

On September 12, 2010, Davis filed this action for judicial review. The Commissioner filed an answer on January 25, 2011. On February 24, 2011, Davis filed

---

[1] At the hearing, Davis was represented by attorney Ross E. Stubblefield. On appeal, Davis is represented by attorney Thomas A. Krause.

a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that she was not disabled and could perform other work that exists in significant numbers in the national economy. On April 25, 2011, the Commissioner filed a responsive brief arguing the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On January 13, 2011, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole." *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (citation omitted). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Id.* (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)); *see also Wildman v. Astrue*, 596 F.3d 959, 963-64 (8th Cir. 2010) ("'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.' *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010);

*see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman*, 596 F.3d at 964 ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Davis' Education and Employment Background

Davis was born in 1974. She is a high school graduate. Following high school, she earned a degree from "barber" college. At the administrative hearing, Davis stated that she was enrolled in classes at Hawkeye Community College. Davis' attorney and Davis discussed her enrollment at Hawkeye Community College:

> Q: How many hours did you --
> A: I have 14 hours, any, anywhere between 12 to 14 hours.
> Q: Do they make any accommodations for you?
> A: I have several accommodations.
> Q: And what are those?
> A: I have extended, I have extended testing time, plus time-and-a-half; tutors for classes beyond success course level; I have copies of PowerPoint; I have the tests read to me; testing in a certain location where it has to be quiet and, while somebody is reading it to me and it has to have a computer so I can write. . . . I have books on tapes and I have the right to copy from peer notes.
> Q: Okay. Why so many accommodations?
> A: I have learning disabilities. I'm dyslexic and other, or learning disabilities.
> Q: Now, with these accommodations, what are your grades?
> A: Last semester I was 3.55, but I was in the Academic Support Center, having, beyond that help with that in this semester and not doing so well because it's starting to get towards the end so it's getting harder and harder.

(Administrative Record at 39.)

The record contains an earnings summary for Davis. The summary report covers Davis' employment history from 1988 to 2009. Davis had little to no earnings from 1988 through 1994. Between 1995 and 2004, Davis earned between $1,948.34 (1995) and $17,979.55 (2000). She has no earnings since 2005.

5

### B. *Administrative Hearing Testimony*

#### 1. *Davis' Testimony*

At the administrative hearing, Davis' attorney asked Davis to explain why she can no longer perform her job as a hairstylist. Davis replied that she has problems with right hand cramping and right carpal tunnel syndrome which causes her hand to "swell up." Davis also described difficulty gripping items that weigh over 5 pounds. She also testified that she suffers from migraine headaches 1 to 3 times per month. The migraines tend to last 1 to 2 days.

Davis' attorney and Davis also discussed her difficulties with depression:

> Q: Now, there's, you mentioned depression. Are you, do you suffer from depression?
> A: Ever since I've had surgery and feel like I'm not adequate to, to do anything, depression has onset.
> Q: Are you receiving treatment for the depression?
> A: Yes, I have the choice of taking medicines. I try to take and get off of them because they make me feel like a zombie or I have no, like my emotions are just there. There's no emotions, I'm just numb to emotion, but I've tried to get off of them and I'm having crying spells or not sleeping, so I'm probably going to have to go back on them.

(Administrative Record at 43-44.) According to Davis, at its worst, her depression makes her want to stay home, do nothing, and sleep. Davis testified, however, that when she takes anti-depressant medication, she is not depressed and does not have her depressive symptoms; but she does not like to take her medication, because the side effects make her "numb to things" and cause difficulties with her concentration.

Davis' attorney also asked Davis to describe her functional capabilities:

> Q: You're able to sit and stand and walk okay.
> A: Yes. Yes.
> Q: Lifting with your left hand, what can you lift, how much?
> A: I could lift 10 pounds, 20 pounds with that one.
> Q: And with your right?

6

> A: Probably two or three pounds, even carrying grocery bags in, I can't, my husband does that.
> Q: Do you do any of like the yard work, the snow shoveling, that kind of thing?
> A: I used to, but now since I've had the surgery, any vibrations or lifting or anything like that, I can't do it. . . .
> Q: When you're on your medicines and you're not in school, how do you spend the day?
> A: When I'm on my medicine?
> Q: Yeah. When you're on the medicines and what would you do?
> A: I just function. I mean, I would go to my son's school and volunteer and, and help them with the kids on field trips and stuff like that. I mean, I'd want to be out and about, but now, without it, I don't want to be around people.

(Administrative Record at 45-46.)

### 2. Vocational Expert's Testimony

At the hearing, the ALJ provided vocational expert Elizabeth Albrecht with a hypothetical for an individual who can:

> Lift[] 20 pounds occasionally, 10 pounds frequently; sitting and standing up to two hours at a time for six of an eight-hour day; walking up to three blocks; never climbing ladders, ropes and scaffolds; only occasional crawling and crouching. The [individual] would need to avoid concentrated exposure to vibration. The [individual] can only do occasional handling and fingering with the right hand. There are no restrictions on the left hand.

(Administrative Record at 52). The vocational expert testified that under such limitations, Davis could not perform her past relevant work. The vocational expert further testified that Davis could perform the following work: (1) counter clerk (550 positions in Iowa and 56,000 positions in the nation), (2) information clerk (750 positions in Iowa and 71,000 positions in the nation), and (3) usher (400 positions in Iowa and 58,000 positions in the nation). The ALJ asked a second hypothetical which was identical to the first hypothetical,

except that the individual would require three or more absences from work per month due to pain, depression, or other mental impairment. The vocational expert testified that under such limitations, Davis could not find competitive employment.

## C. Davis' Medical History

On June 28, 2006, Davis was referred to Dr. Gary A. Knudson, M.D., for evaluation of bilateral hand numbness and tingling. Davis reported tingling and burning throughout her hands with pain up into her forearms. Upon examination, Dr. Knudson diagnosed Davis with bilateral carpal tunnel syndrome, right greater than left. An EMG from July 2006 showed minor right carpal tunnel syndrome. Dr. Knudson recommended a surgical release as treatment. On July 17, 2006, Davis underwent a right endoscopic carpal tunnel release. One year following surgery, on July 12, 2007, Davis met with Dr. Knudson complaining of "cramping-type pain" and irritation in her right hand. Davis reported discomfort with writing, repetitive use, and vibration. Upon examination, Dr. Knudson found that Davis "continues to have symptoms referable to carpal tunnel type syndrome, but certainly not classic for this, and she has had adequate relief endoscopically."[2] Dr. Knudson recommended another EMG evaluation before determining the proper course of treatment. In August 2007, the EMG showed no carpal tunnel syndrome. Specifically, Dr. Knudson opined that "[i]t appears that the symptoms she was having last year were not related to carpal tunnel syndrome despite the mild findings on EMG."[3] Dr. Knudson informed Davis that there was nothing from an orthopaedic standpoint that he could offer her.

On September 17, 2007, Davis was referred by Disability Determination Services ("DDS") to Robert Welshons, PA-C, for a physical evaluation. Welshons noted that Davis has difficulty using her right hand. Specifically, Welshons noted that:

---

[2] *See* Administrative Record at 221.

[3] *Id.* at 220.

8

> [Davis] reports that doing activities such as mowing the lawn tends to cause her hands to hurt. She has decreased grip strength and will drop objects. Repetitive duties like writing tend to increase her symptoms. Because her surgery on the right side was not very effective she does not want to have surgery on the left side. . . . She has no other complaints today regarding her disability. There is apparently a history of some knee pain but she states, 'My knees are fine.'

(Administrative Record at 249.) Upon examination, Welshons diagnosed Davis with carpal tunnel, status post surgery on the right wrist. Welshons opined that Davis' functional abilities were as follows:

> [Davis] has apparently developed carpal tunnel and did undergo treatment for this but has not had the results wished for following surgery. She continues to have problems with paresthesias to her dominant hand. For this reason she would have trouble lifting moderate weight with her right hand alone, but she should be able to lift with the help of the left hand and arm. She has no troubles with standing, walking or moving about. . . . She would have some troubles with handling objects with the right hand. She might have trouble doing repetitive tasks with the right hand and might have trouble with very fine motions of the right hand. A lot of repetitive activity with the right hand or a lot of writing might be difficult for her to do. She could stoop, kneel or crawl for short periods of time, but this should be limited, mostly secondary to her obesity.

(Administrative Record at 250.)

On October 23, 2007, Dr. Dee Wright, Ph.D., reviewed Davis' medical records and provided DDS with a Psychiatric Review Technique assessment for Davis. Dr. Wright diagnosed Davis with depression. Dr. Wright determined that Davis had the following limitations: mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. Dr. Wright concluded that:

> [Davis'] diagnosed medically determinable mental impairment (depression) does not currently create significant limitations of

9

> function for [her] cognitively, socially, or with activities of
> daily living from a psychological perspective. . . . [Davis']
> diagnosed medically determinable mental impairment would
> currently be considered nonsevere. . . . The preponderance of
> the evidence in file is consistent and does support [Davis']
> limitations of function as described.

(Administrative Record at 274.)

On October 23, 2007, Dr. John May, M.D., reviewed Davis' medical records and provided DDS with a physical residual functional capacity ("RFC") assessment for Davis. Dr. May determined that Davis could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for about six hours in an eight-hour workday, (4) sit with normal breaks for about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. May noted that "[Davis] should avoid frequent and constant use of the right hand but should be capable of occasional fingering and handling. Reaching and feeling should not be limited. She should avoid vibration."[4] Dr. May further determined that Davis should never climb ladders, ropes, or scaffolds, and only occasionally crouch and crawl. Dr. May found no visual or communicative limitations.

On June 6, 2008, Dr. Mitch Bernstrom, M.D., filled out a "Medical Source Statement" for Davis. Dr. Bernstrom diagnosed Davis with right carpal tunnel syndrome. Dr. Bernstrom opined that Davis could sit at one time for 3 hours in an eight-hour workday, and stand and walk at one time for 2 hours in an eight-hour workday without "severe, disabling pain." Furthermore, Dr. Bernstrom indicated that Davis could sit for 6 hours total in an eight-hour workday, and stand for a total of 1 hour and walk for a total of 1 hour in an eight-hour workday. Dr. Bernstrom also opined that Davis could rarely lift more than 5 pounds in an eight-hour workday. Dr. Bernstrom further stated that Davis could not use her right hand for repetitive actions such as simple grasping, pushing and

---

[4] *See* Administrative Record at 278.

10

pulling controls, and fine manipulation. Dr. Bernstrom concluded that Davis' prognosis was "guarded."

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Davis is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The five steps an ALJ must consider are:

> (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix"); (4) whether the claimant can return to [his or] her past relevant work; and (5) whether the claimant can adjust to other work in the national economy.

*Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v)). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005), in turn quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).

In order to establish a disability claim, "[t]he claimant bears the burden of demonstrating an inability to return to [his or] her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to "show [that] the claimant is capable of performing other work." *Id*. In order to show that a claimant is capable of performing other work, the Commissioner must demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with

claimant's impairments and vocational factors such as age, education, and work experience. *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545. "'It is the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that Davis had not engaged in substantial gainful activity since June 1, 2006. At the second step, the ALJ concluded from the medical evidence that Davis had the following severe combination of impairments: status post right carpal tunnel repair, migraines, and obesity. At the third step, the ALJ found that Davis did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Davis' RFC as follows:

> [Davis] has the residual functional capacity to perform light work . . . such that she can lift and carry twenty pounds occasionally, ten pounds frequently; sit for two hours at a time for six hours in an eight hour workday; stand for two hours at a time for six hours in an eight hour workday; walk three blocks; never climb ladders, ropes, or scaffolds; occasionally crawl and crouch; she would need to avoid concentrated exposure to vibrations; and she can only occasionally handle and finger with her right hand.

(Administrative Record at 20.) Also at the fourth step, the ALJ determined that Davis could not perform any of her past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Davis could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Davis was not disabled.

### B. Objections Raised By Claimant

Davis argues that the ALJ erred in three respects. First, Davis argues that the ALJ failed to properly evaluate the opinions of her treating physician, Dr. Bernstrom. Second, Davis argues that the ALJ failed to provide the vocational expert with a proper hypothetical question that included her limitations with her right hand. Lastly, Davis argues that in making his RFC determination, the ALJ failed to properly evaluate her ability to use her hands and wrists for grasping and dexterity.

#### 1. Dr. Bernstrom's Opinions

Davis argues that the ALJ failed to properly evaluate the opinions of her treating physician, Dr. Bernstrom. Specifically, Davis argues that the ALJ failed to give good reasons for discounting the opinions of Dr. Bernstrom. Davis requests that this matter be reversed and remanded for further consideration of Dr. Bernstrom's opinions.

An ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence on the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). The opinion of a treating physician:

> should not ordinarily be disregarded and is entitled to substantial weight. A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.

*Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (citations omitted).

"Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's

statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC assessment if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ).

The regulations also require an ALJ to give "good reasons" for giving weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). The regulations also require an ALJ to give "good reasons" for rejecting statements provided by a treating physician. *Id.*; *see also Tilley v. Astrue*, 580 F.3d 675, 680 (8th Cir. 2009) ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion.") (citation omitted).

The ALJ's decision provides a detailed summary of the opinions expressed by Dr. Bernstrom.[5] In particular, the ALJ noted that:

> Dr. Bernstrom advised [Davis] to try to occupy her time better by volunteering for some things outside of her home such as with her church, community, or school as this would allow [her] to accomplish some things without feeling useless; [Davis] had complained that she felt worthless and useless since she was not working. Dr. Bernstrom indicated [Davis] should definitely also be at least getting some therapy in attempt to rehabilitate her hand. Furthermore, Dr. Bernstrom noted in June 2008 clinical notes that [Davis] had not really seen him very much for her right hand limitations; rather [she] had been seeing Dr. Johnston, an orthopedist. Notably, Dr. Johnston has not provided a Medical Source Statement regarding [Davis]. Accordingly, the undersigned gives only some evidentiary weight to Dr. Bernstrom's opinions due to

---

[5] *See* Administrative Record at 24.

> the admitted lack of treating history with [Davis] for her right
> hand as well as the inconsistencies of Dr. Bernstrom's
> opinions with the entire medical evidence of record.

(Administrative Record at 24-25.)

Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Bernstrom. The Court also finds that the ALJ provided "good reasons" for rejecting Dr. Bernstrom's opinions. *See* 20 C.F.R. § 404.1527(d)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2. *Hypothetical Question*

Davis argues that the ALJ's hypothetical question to the vocational expert failed to capture all of her credible limitations. Specifically, Davis argues that the ALJ failed to include limitations from Welshons, an examining source, whose opinions the ALJ gave "significant weight." In particular, Davis points out that Welshons opined:

> [Davis] would have some troubles with handling objects with
> the right hand. She might have trouble doing repetitive tasks
> with the right hand and might have trouble with very fine
> motions of the right hand. A lot of repetitive activity with the
> right hand or a lot of writing might be difficult for her to do.

(Administrative Record at 250.) Davis maintains that this matter should be "reversed and remanded for a proper hypothetical question that includes all of [her] credible limitations."[6]

Hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v.*

---

[6] *See* Davis' Brief (docket number 8) at 12.

*Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

In his hypothetical question, the ALJ stated that Davis "can only do occasional handling and fingering with the right hand. There are no restrictions on the left hand."[7] The Commissioner argues that the ALJ's limitation of "occasional" handling and fingering with the right hand adequately captured Davis' limitations with her right hand based on both the record and Welshons' opinions. The Commissioner points out that Welshons stated that Davis "*might* have trouble doing repetitive tasks with the right hand and *might* have trouble with very fine motions of the right hand. A lot of repetitive activity with the right hand or a lot of writing *might* be difficult for her to do."[8] The Commissioner concludes that Welshons' "assessment is equivocal and speculative, and the ALJ's limitation to occasional handling and fingering appropriately accounts for these indefinite limitations, as well."[9] The Court agrees with the Commissioner's assessment. Moreover, the Court finds that there is ample evidence in the record, which was considered by the ALJ, and shows normal test results for Davis' right arm.[10] Therefore, having reviewed the entire record, the Court finds that the ALJ thoroughly considered and discussed the

---

[7] *See* Administrative Record at 52.

[8] *See* Administrative Record at 52 (Emphasis added).

[9] *See* Commissioner's Brief (docket number 9) at 19.

[10] *See* Administrative Record at 22-24 (ALJ's discussion of Davis' medical history); 291-94 (normal EMG study of Davis' right arm); 341-49 (multiple normal EMG and diagnostic studies of Davis' right arm).

16

medical evidence in determining Davis' impairments.[11] The Court further determines that the ALJ's findings and conclusions are supported by substantial evidence on the record as a whole. Because the hypothetical question posed to the vocational expert by the ALJ was based on the ALJ's findings and conclusions, the Court determines that the ALJ's hypothetical question properly included those impairments which were substantially supported by the record as a whole. *See Goose*, 238 F.3d at 985; *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004) (an ALJ need only include those work-related limitations that he or she finds credible). Accordingly, the ALJ's hypothetical question was not flawed or improper.

### 3. RFC Determination

Davis argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly evaluate her ability to use her hands and wrists for grasping and dexterity. Specifically, Davis refers to an occupational therapy evaluation from September 2007, which showed limitations in grasping and manual dexterity.[12] Davis maintains that this matter should be remanded for further consideration of the occupational therapy evaluation, especially as it relates to her RFC assessment.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating

---

[11] *Id.* at 22-24.

[12] *See* Administrative Record at 253-54.

physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697(citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

In making his RFC assessment, the ALJ considered the September 2007 occupational therapy evaluation. Specifically, the ALJ noted that:

> Clinical notes from September 2007 revealed [Davis] appeared to be a good candidate for hand rehabilitation. Primary limitations were with respect to constant pain/hypersensitivity in the right hand; and strength on the right was weak as compared with the left which was well above what was considered normal. Rehabilitation treatment consisted of fluidotherapy for desensitization and range of motion, activities of daily living, adaptive equipment suggestions; and home exercise program with green Theraputty. [Davis] attended two appointments and cancelled the remaining appointments.

(Administrative Record at 22.) It is clear from the record that the ALJ considered the occupational therapy evaluation in making his decision. Furthermore, the ALJ correctly pointed out that Davis failed to follow the recommendations and treatment contained in the evaluation; thereby, showing an inconsistency with the record as a whole. Thus, having reviewed the entire record, the Court finds that the ALJ properly considered Davis' medical records and observations of treating physicians in making his RFC assessment for Davis.[13] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007) (providing that an ALJ also has a duty to develop the record fully and fairly). Because the ALJ considered the medical evidence as a whole, the Court concludes

---

[13] *See* Administrative Record at 20-25 (providing thorough discussion of the relevant evidence for making a proper RFC determination).

that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## VI. CONCLUSION

The Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Bernstrom; the ALJ's hypothetical question properly included Davis' impairments which were substantially supported by the record as a whole; and the ALJ made a proper RFC determination based on a fully and fairly developed record. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 1) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 22nd day of August, 2011.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA